UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PROGENICS PHARMACEUTICALS, INC.,

                    Movant,

      vs.

IMS CONSULTING GROUP,

                    Respondent.

Case No. 14-MC-00245-P1

**RESPONDENT IMS CONSULTING GROUP'S MEMORANDUM
IN OPPOSITION TO PROGENICS PHARMACEUTICALS, INC.'S MOTION
<u>TO COMPEL COMPLIANCE WITH AN ARBITRAL WITNESS SUMMONS</u>**

PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, New York 10036
(212) 858-1000 (telephone)
(212) 858-1500 (fax)
kenneth.taber@pillsburylaw.com

*Attorneys for Respondent IMS Consulting Group*

501430163v7

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I. UNDER RULE 45(C), NON-PARTY IMS CANNOT BE COMPELLED TO PRODUCE TOKYO-BASED EMPLOYEES TO TESTIFY IN A NEW YORK ARBITRATION HEARING. ............................................................................................................... 1

II. IMS SHOULD NOT NOW BE COMPELLED TO MANUFACTURE A NEW YORK-BASED WITNESS TO TESTIFY AT THE ARBITRATION HEARING ON AUGUST 25TH. ........................................................................................................................ 3

   A. Progenics May Not Employ Rule 30(b)(6) procedures in the Rule 45 Arbitral Hearing Context. ....................................................................................................................... 4

   B. Even if Rule 30(b)(6) Procedures Were Available Here, IMS Should Not Be Put to the Undue Burden of Manufacturing a New York-based Witness for Progenics. .................... 7

CONCLUSION ............................................................................................................................. 11

TABLE OF AUTHORITIES

Pages

Cases

*A & E Products Grp., L.P. v. Mainetti USA Inc.*,
   No. 01 CIV. 10820 (RPP), 2004 WL 345841 (S.D.N.Y. Feb. 25, 2004) ................................... 6

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
   262 F.R.D. 293 (S.D.N.Y. 2009) ............................................................................................... 8

*Atmel Corp. v. LM Ericsson Telefon, AB*,
   371 F. Supp. 2d 402 (S.D.N.Y. 2005) ....................................................................................... 6

*Briese Lichttechnik Vertriebs GmbH v. Langton*,
   272 F.R.D. 369 (S.D.N.Y. 2011) ............................................................................................. 11

*Concord Boat Corp. v. Brunswick Corp.*,
   169 F.R.D. 44 (S.D.N.Y. 1996) ................................................................................................. 8

*Conyers v. Balboa Ins. Co.*,
   No. 8:12-cv-30-T-33EAJ, 2013 WL 2450108 (M.D. Fla. June 5, 2013) .................................. 5

*Donoghue v. Orange Cnty.*,
   848 F.2d 926 (9th Cir. 1987) ..................................................................................................... 5

*Dopson-Troutt v. Novartis Pharmas. Corp.*,
   295 F.R.D. 536 (M.D. Fla. 2013) .............................................................................................. 5

*Dynegy Midstream Servs. v. Trammochem*,
   451 F.3d 89 (2d Cir. 2006) ........................................................................................................ 1

*Estate of Klieman v. Palestinian Auth.*,
   293 F.R.D. 235 (D.D.C. 2013) ............................................................................................ 2, 10

*Hill v. National R. R. Passenger Corp.*,
   No. CIV. A. No. 88-5277, 1989 WL 87621 (E.D. La. July 28, 1989) ...................................... 5

*In re Puerto Rico Elec. Power Auth.*,
   687 F.2d 501 (1st Cir. 1982) ................................................................................................... 11

*Integrity Ins. Co. v. Am. Centennial Ins. Co.*,
   885 F. Supp. 69 (S.D.N.Y. 1995) .............................................................................................. 6

*Life Receivables Trust v. Syndicate 102 at Lloyd's of London*,
   549 F.3d 210 (2d Cir. 2008) ...................................................................................................... 6

*Nature's Plus Nordic A/S v. Natural Organics, Inc.*,
   274 F.R.D. 437 (E.D.N.Y. 2011) ............................................................................................ 11

*Odfjell ASA v. Celanese AG*,
   328 F. Supp. 2d 505 (S.D.N.Y. 2004) ....................................................................................... 7

*Premier Election Solutions, Inc. v. Systest Labs Inc.*,
   No. CIVA 09CV01822WDMKMT, 2009 WL 3075597 (D. Colo. Sept. 22, 2009) .................. 8

*Price Waterhouse LLP v. First American Corp.*,
   182 F.R.D. 56 (S.D.N.Y. 1998) ................................................................................................ 2

*Sara Lee Corp. v. Kraft Foods Inc.*,
   276 F.R.D. 500 (N.D. Ill. 2011) ................................................................................................ 6

*Sokolow v. Palestine Liberation Org.*,
   No. 04 CIV. 397 GBD RLE, 2012 WL 3871380 (S.D.N.Y. Sept. 6, 2012) ............................ 10

*Williams v. Asplundh Tree Expert Co.*,
   No. 05-cv-479-J-33MCR, 2006 WL 2598758 (M.D. Fla. Sept. 11, 2006) ............................... 5

*Wultz v. Bank of China Ltd.*,
   298 F.R.D. 91 (S.D.N.Y. 2014) .............................................................................................. 10

### Statutes and Codes

United States Code
   Title 9, section 7 .................................................................................................................... 1, 6

### Rules and Regulations

Federal Rules of Civil Procedure
   Rule 30(b)(6) .................................................................................................................... passim
   Rule 45 ............................................................................................................................ 2, 4, 5, 7
   Rule 45(c) ................................................................................................................................. 1
   Rule 45(c)(1)(A) ....................................................................................................................... 2
   Rule 45(c)(3)(A)(iv) ................................................................................................................. 8
   Rule 45(d)(2)(B)(ii) .................................................................................................................. 8

### Other Authorities

INTERNATIONAL DISPUTE RESOLUTION PROCEDURES: INTERNATIONAL DISPUTE RESOLUTION
   PROCEDURES (INCLUDING MEDIATION AND ARBITRATION RULES) Art. 21 ¶10 (2014) .............. 7

iii

501430163v7

**PRELIMINARY STATEMENT**

Respondent IMS Consulting Group ("IMS") submits this memorandum in opposition to movant Progenics Pharmaceuticals, Inc.'s ("Progenics") August 6, 2014, Motion to Compel Compliance with its Arbitral Witness Summons dated July 23, 2014 (the "Subpoena"). Progenics' motion should be denied, and the Subpoena quashed, because:

(i)   it impermissibly seeks to require the only witnesses here with the requisite knowledge, all located in Tokyo, Japan, to testify at trial proceedings more than 100 miles from where they reside, are employed or regularly transact business in person (Point I, *infra*);

(ii)   despite purporting to be a *trial* subpoena, it impermissibly utilizes Rule 30(b)(6) *deposition* procedures (Point II.A, *infra*); and

(iii)   even if such Rule 30(b)(6) deposition procedures were available in this arbitral trial context, it imposes an undue burden upon IMS (Point II.B, *infra*).

**ARGUMENT**

**I.   UNDER RULE 45(C), NON-PARTY IMS CANNOT BE COMPELLED TO PRODUCE TOKYO-BASED EMPLOYEES TO TESTIFY IN A NEW YORK ARBITRATION HEARING.**

Section 7 of the Federal Arbitration Act ("FAA") states that arbitrators "may summon in writing any person to attend before them . . . as a witness in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." 9 U.S.C. § 7. Any such summons must, however, "be served in the same manner as subpoenas to appear and testify before the court," *Id*., and the "[s]ervice of subpoenas to appear before the federal courts and enforcement of those subpoenas are in turn governed by Federal Rule of Civil Procedure 45." *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006).

1

Under Rule 45, such subpoenas may require non-parties to attend a trial only "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). But IMS has no employee with the requisite knowledge called for by the Subpoena anywhere close to within 100 miles of the Southern District of New York. *See* Declaration of Harvey A. Ashman dated August 11, 2014 ("Ashman Decl.") ¶ 10. To the contrary, the IMS employees who have that knowledge all "reside, are employed or regularly transact business in person" in Tokyo, Japan. Ashman Decl. ¶ 7.[1]

Courts routinely quash such subpoenas exceeding the 100-mile reach of Rule 45.[2] Consistent with that practice, the Tribunal here has already made it clear, in an August 5, 2014, email from the Hon. William G. Bassler, that "it was not the intention of the Tribunal to require the appearance of a witness in Japan but a witness within reach of the subpoena in NYC." Ashman Decl. Ex. C.

Progenics therefore now concedes, as it must, that "IMS may not be *compelled* to have an employee in Japan attend in Japan live or by video link because the arbitrators have said they did not intend this." Progenics' August 7, 2014, Supplemental Memorandum in Support ("Progenics Supp. Mem.") at 5 (emphasis in original). Yet, despite that concession, Progenics still attempts, through the back door, to require IMS to do just that: produce a witness from Tokyo by videoconference.

---

[1] That fact is undisputed here, though it would not have been known to the arbitration tribunal (the "Tribunal") when it issued the Subpoena, since IMS was not a participant in those prior proceedings. *See* Declaration of Marc J. Goldstein dated August 25, 2014, Ex. 5 at 15-16 (Goldstein June 16, 2014, email to the Tribunal).

[2] *See, e.g.*, *Price Waterhouse LLP v. First American Corp.*, 182 F.R.D. 56, 62-63 (S.D.N.Y. 1998) ("[A]llowing a subpoena served pursuant to Rule 30(b)(6) to evade the proscriptions of [the 100-mile rule] would render Rule 45 surplusage and subject nonparties to the same level of burdensome discovery that can be imposed upon a party."); *Estate of Klieman v. Palestinian Auth.*, 293 F.R.D. 235, 239-40 (D.D.C. 2013) ("[U]nder Rule 45 this Court must quash a subpoena where a nonparty organization does not employ anyone who is suitable to serve as a Rule 30(b)(6) representative within 100 miles of the district.").

Recognizing that IMS has no witness with the requisite knowledge in New York, Progenics repeatedly suggests in its papers that, "if it is burdensome for IMS to undertake a process of educating a designee, then there is no obstacle to IMS designating the knowledgeable person in Japan to testify by video conference." Progenics' August 6, 2014, Memorandum in Support ("Progenics Mem.") at 10; Progenics Mem. at 11 (emphasizing that the burden of educating a U.S.-based witness "may be avoided if IMS elects to have a witness in Japan testify by videoconference"); Progenics Supp. Mem. at 3 ("IMS has the option to proceed [by video] if it considers that the effort involved to educate a US witness who is more easily able to attend in person in New York, and could be so compelled, is more than IMS wants to invest.").

We respectfully submit that it is improper for Progenics, first, to create a monumental burden for IMS (*see* Section II.B, *infra*), and then point to but one escape route – an avenue it knows full well requires IMS to do something Progenics is concededly not entitled to require. Yet, that is precisely the gambit Progenics is attempting here. Knowing now that IMS has no witness in New York with the requisite knowledge, and recognizing the undue burden of manufacturing such a witness in New York, Progenics still seeks what the Tribunal has made clear it has no right to secure: "the appearance of a witness in Japan."[3]

## II.   IMS SHOULD NOT NOW BE COMPELLED TO MANUFACTURE A NEW YORK-BASED WITNESS TO TESTIFY AT THE ARBITRATION HEARING ON AUGUST 25TH.

In order to convince this Court to compel compliance with its Subpoena as issued, Progenics must make two showings – neither of which it can satisfy here. *First*, Progenics must

---

[3] Any suggestion by Progenics that presenting a witness in Japan by videoconference would not be burdensome for IMS is also incorrect. Any such Japanese witness would have to be prepared by IMS U.S. counsel familiar with the Relistor consulting engagement and with U.S. litigation procedures. The witness would also have to be represented by counsel during the testimony. Because such U.S. counsel would need to be physically present with the witness to participate effectively in that preparation and testimony, the burden of such videoconference testimony would be significant.

3

show that a Rule 45 *trial subpoena* may indeed be issued for an arbitration hearing to an unnamed corporate representative, as if it were a proper Rule 30(b)(6) *deposition subpoena*. But Progenics fails to cite a single case endorsing the use of such a procedural device at an arbitration hearing.[4] We, too, are unaware of any such case – a telling void when one considers just how many cases are actually arbitrated.

*Second*, even if a Rule 30(b)(6) subpoena could compel a nonparty's unnamed corporate representative to appear at an arbitration hearing, Rule 30(b)(6) expressly requires that its application not impose an "undue burden." Here, as detailed below, given the highly specific and Japan-based information called for, and the fact that many of the relevant documents are in Japanese, that undue burden is undeniable. Because Progenics cannot overcome IMS's demonstration of undue burden, and because its proposed "solution" – video testimony in Japan – has already been rejected by the Tribunal, the testimonial aspects of the Subpoena should now be quashed, with only document production required.

> **A.   Progenics May Not Employ Rule 30(b)(6) procedures in the Rule 45 Arbitral Hearing Context.**

Rule 30(b)(6) permits a party to "name as *the deponent*," a nonparty corporate entity, provided the subpoena "describe[s] with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6) (emphasis added). The subpoenaed nonparty corporation then designates an individual who can "testify about information known or reasonably available to" the corporation. *Id*.

There is, however, no parallel provision to Rule 30(b)(6) that applies to trial testimony – *i.e.*, that would permit a party to compel a nonparty corporation to testify *at trial*, pursuant to a

---

[4] Progenics effectively admits it has no supporting authority in the arbitral hearing context by cleverly describing it as "an issue that is not well developed in the case law." Progenics Mem. at 6.

4

trial subpoena directed to an unnamed corporate representative. To the contrary, on its face, Rule 30(b)(6) applies only to pre-trial depositions.

Progenics fails to cite, and IMS has been unable to find, a single case where a court has permitted a Rule 45 *trial* subpoena, in an arbitral hearing, to be addressed to a nonparty's unnamed corporate representative under Rule 30(b)(6). This Court would thus be the very first to permit that procedural device. For the three separate reasons detailed below, we respectfully submit that this Court ought not break that new ground here.

*First*, there is scant authority for permitting such a tactic even in ordinary civil litigation, with several courts having expressly rejected the use of the Rule 30(b)(6) device at the trial of a civil suit. *See, e.g.*, *Donoghue v. Orange Cnty.*, 848 F.2d 926, 931-32 (9th Cir. 1987) (affirming district court's ruling that Rule 30(b)(6) procedures should not be used in the Rule 45 trial subpoena context); *Dopson-Troutt v. Novartis Pharmas. Corp.*, 295 F.R.D. 536, 539-40 (M.D. Fla. 2013) (endorsing defendant's argument that Rule 30(b)(6) procedures are inapplicable to Rule 45 trial subpoenas); *Hill v. National R. R. Passenger Corp.*, No. CIV. A. No. 88-5277, 1989 WL 87621, at *1 (E.D. La. July 28, 1989) (quashing trial subpoena issued to unnamed corporate representative of *party* corporation; no provision in Rule 45 "allow[s] the use of a 30(b)(6)-type designation"); *but see Conyers v. Balboa Ins. Co.*, No. 8:12-cv-30-T-33EAJ, 2013 WL 2450108, at **1-2 (M.D. Fla. June 5, 2013) (rejecting *Hill* as unpersuasive and denying motion to quash trial subpoena served on *party* corporation's unnamed corporate representative); *Williams v. Asplundh Tree Expert Co.*, No. 05-cv-479-J-33MCR, 2006 WL 2598758, at *3 (M.D. Fla. Sept. 11, 2006) (denying motion to quash trial subpoena to *party* corporation because Rule 45's 100-mile rule did not apply to a corporate representative of a party).

*Second*, the evidentiary value at trial of a nonparty's testimony through a Rule 30(b)(6) corporate representative, with no personal knowledge of the facts, is *de minimis*. Such testimony

would not even constitute admissions against interest, since the corporation is a nonparty. *See, e.g.*, *Sara Lee Corp. v. Kraft Foods Inc.*, 276 F.R.D. 500, 503 (N.D. Ill. 2011) (observing that the "dangers of testimony based on corporate knowledge multiply where the Rule 30(b)(6) witness is a third party"); *A & E Products Grp., L.P. v. Mainetti USA Inc.*, No. 01 CIV. 10820 (RPP), 2004 WL 345841, at *7 (S.D.N.Y. Feb. 25, 2004) (noting that, "while Rule 30(b)(6) testimony is binding, some authority holds that it does not constitute a judicial admission that ultimately decides on issues and cannot be contradicted or used for impeachment purposes" (collecting cases)).

Fact testimony from a witness with no personal knowledge of the facts, and who has merely been "educated" through hearsay conversations with others, should be of no evidentiary value at trial. *See generally Sara Lee Corp.*, 276 F.R.D. at 503 (while the admission of testimony by a nonparty Rule 30(b)(6) witness may be appropriate regarding "corporate policies and procedures," it is "less appropriate for proving how the parties acted in a given instance").

*Third*, as this Court has repeatedly observed in the past, Section 7 of the FAA does not even permit arbitrators to compel the attendance of nonparties – *any* nonparty – at depositions in arbitrations. *See, e.g.*, *Atmel Corp. v. LM Ericsson Telefon, AB*, 371 F. Supp. 2d 402, 403 (S.D.N.Y. 2005) ("The weight of judicial authority favors the view that [Section 7] does not authorize arbitrators to issue subpoenas for discovery depositions against third parties." (collecting cases)), *abrogated on other grounds by Life Receivables Trust v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210 (2d Cir. 2008); *Integrity Ins. Co. v. Am. Centennial Ins. Co.*, 885 F. Supp. 69, 73 (S.D.N.Y. 1995) ("That a nonparty might suffer this burden in a litigation is irrelevant; arbitration is not litigation, and the nonparty never consented to be a part of it."), *abrogated on other grounds by Life Receivables Trust*, 549 F.3d 210.

As Judge Rakoff explained, "inasmuch as arbitration is largely a matter of contract, it would seem particularly inappropriate to subject parties who never agreed to participate in the arbitration in any way to the notorious burdens of pre-hearing discovery," such as depositions. *Odfjell ASA v. Celanese AG*, 328 F. Supp. 2d 505, 507 (S.D.N.Y. 2004) (denying movant's motion to compel a nonparty to testify at a deposition in connection with an arbitration). The American Arbitration Associations agrees: "Depositions . . . as developed for use in U.S. court procedures generally are not appropriate procedures for obtaining information in an arbitration under these Rules." INTERNATIONAL DISPUTE RESOLUTION PROCEDURES: INTERNATIONAL DISPUTE RESOLUTION PROCEDURES (INCLUDING MEDIATION AND ARBITRATION RULES) Art. 21 ¶10 (2014).

Progenics, having expressly agreed to arbitrate this dispute, ought not now be entitled to a benefit – the use of Rule 30(b)(6) – traditionally reserved for civil litigants. Indeed, Progenics' failure to cite a single decision permitting the conduct of a Rule 30(b)(6) deposition in an arbitration, let alone as trial testimony, should be fatal to its application here.

### B. Even if Rule 30(b)(6) Procedures Were Available Here, IMS Should Not Be Put to the Undue Burden of Manufacturing a New York-based Witness for Progenics.

Even if this Court were now to become the first to uphold a 30(b)(6) nonparty subpoena for an arbitral hearing, given the particular circumstances presented here, IMS still ought not be compelled to manufacture a New York-based witness for Progenics. Indeed, Rule 45 "mandates this Court to quash or modify a subpoena that 'subjects a person to undue burden.'" *Aristocrat*

*Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 293, 299 (S.D.N.Y. 2009) (quoting Fed. R. Civ. P. 45(c)(3)(A)(iv)).[5]

Here, Progenics warns that IMS's corporate representative must be prepared to answer highly-specific, Japan-based questions, including:

(1) "Why did IMS decide to use a 2005 [Japanese] Ministry of Health survey as the measure of total cancer patients in Japan, rather than other publicly-available statistics?"

(2) What other statistics concerning the universe of cancer patients in Japan does IMS consider might have been used instead?"

(3) "Were IMS's [Japanese] survey results reported to the client Ono before the sales estimates found in the August 2013 Final Report were prepared?"

(4) "What discussions were held between IMS and Ono concerning the NHI [Japanese Yen] reimbursement price of Relistor that IMS would use in reporting sales estimates for Relistor?"

(5) Whether "IMS did certain types of analysis and for certain reasons omitted that analysis from the report."

Progenics Mem. at 10; Goldstein Decl. ¶ 23.

And, those questions are surely just the beginning – because whatever answers are given, there will likely be follow-up questions on a wide range of Japan-specific topics. Indeed, Progenics admits what it really now wants, broadly speaking, is "the chance to question IMS about why it made the assumptions" underlying its report to Ono (Goldstein Decl. ¶ 21), and that IMS's witness therefore "become informed in a meaningful way about any such analysis that

---

[5] Nonparty witnesses are certainly entitled to "consideration regarding expense and inconvenience." *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996); Fed. R. Civ. P. 45(d)(2)(B)(ii) (any order to compel "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance"); *Premier Election Solutions, Inc. v. Systest Labs Inc.*, No. CIVA 09CV01822WDMKMT, 2009 WL 3075597, at *3 (D. Colo. Sept. 22, 2009) ("discovery from third-parties in particular must, under most circumstances, be closely regulated").

was done, so as to be able to explain what was done and what were the conclusions." Progenics Mem. at 10; Goldstein Decl. ¶ 23.[6]

It is untenable to suggest that someone in IMS's New York office – someone unschooled in the nuances of the Japanese healthcare market, who never worked on this consulting engagement, nor even touched it – can now competently, and truthfully, respond under oath to such detailed Japan-specific inquiries. Progenics surely knows as much, which is why Progenics repeatedly proposes instead that an IMS employee in Tokyo be proffered. Progenics Mem. at 10-11; Progenics Supp. Mem. at 3. But, as Progenics knows full well, the Tribunal has already ruled otherwise.

As the accompanying Ashman Declaration explains, IMS does not employ anyone in New York with the requisite understanding of the Japanese healthcare market and of this particular engagement. Ashman Decl. ¶ 10. Without such knowledge, a New York-based IMS employee could never accurately explain under oath the reasons the IMS Relistor Team in Japan gave the particular advice it did on any of the specific issues presented. Ashman Decl. ¶ 11. Progenics' follow-up questions could likewise never be answered completely and accurately by such a witness.

IMS's Relistor Team brought to this engagement more than three decades' worth of Japanese healthcare industry knowledge – knowledge that cannot possibly be communicated to some other testifying witness in New York in just a matter of days. Ashman Decl. ¶ 8. Armed with that in-depth expertise, the team then spent approximately 750 hours on the Relistor engagement, and billed approximately $140,000 for its work, further reflecting the complexity of

---

[6] What Progenics proposes is, in fact, little different than calling a U.S. lawyer to testify under oath about the nuances of Japanese law, as applied in advising during a complex corporate transaction. While it may be possible, in the course of a few days, to teach a U.S. lawyer basic principles of Japanese law, the suggestion that a U.S. lawyer could competently address the operation of Japanese law in a complex transaction, without years of actual experience practicing as a Japanese lawyer, is ludicrous on its face. The same is equally true here.

this particular engagement. Ashman Decl. ¶ 9. Moreover, many of the documents the team generated in that process are in Japanese, not English. Ashman Decl. ¶ 10.

Under these circumstances, then, the only appropriate outcome is for the testimonial aspect of the Subpoena to be quashed. *See, e.g.*, *Estate of Klieman*, 293 F.R.D. at 239-40 (holding that a court "must quash a subpoena where a nonparty organization does not employ anyone who is suitable to serve as a Rule 30(b)(6) representative within 100 miles of the district"); *Sokolow v. Palestine Liberation Org.*, No. 04 CIV. 397 GBD RLE, 2012 WL 3871380, at *4 (S.D.N.Y. Sept. 6, 2012) (nonparty British Broadcasting Corporation, which "asserted it does not have any witness in the United States," who may testify as required by the deposition subpoena, need not comply with the subpoena).

Rule 30(b)(6) imposes upon nonparties a duty only "to prepare the designee to the extent matters are *reasonably* available, whether from documents, past employees, or other sources." *Wultz v. Bank of China Ltd.*, 298 F.R.D. 91, 99 (S.D.N.Y. 2014) (emphasis added). Here, IMS cannot prepare such a suitable corporate representative for trial testimony, under oath, using "reasonably available" means. Ashman Decl. ¶ 11.

As for Progenics' reliance on *Wultz* to supposedly support the enforcement of its Subpoena (Progenics Mem. at 8-9), Judge Scheindlin merely reaffirmed there the long-established principle that corporations noticed or subpoenaed for a civil suit deposition pursuant to Rule 30(b)(6), even if nonparties, have "an affirmative duty to prepare the designee to the extent matters are *reasonably available*, whether from documents, past employees or other sources." *Wultz*, 298 F.R.D. at 99 (emphasis added).[7]

---

[7] In *Wultz*, the family members of individuals injured or killed by a 2006 suicide bombing in Tel Aviv brought suit against the Bank of China ("BOC"), alleging BOC had provided material support to the responsible terrorist organization by executing wire transfers to one of its alleged leaders. In advancing its defense, BOC twice subpoenaed Bank Hapoalim ("Hapoalim"), where the alleged terrorist leader held accounts, ultimately seeking

Here, however, what Progenics demands is that IMS produce a corporate representative in New York to answer highly detailed questions about a 750-hour consulting engagement, handled entirely by a team of Japan-based employees, operating in the Japanese language, with a combined 30-plus years of experience in, and knowledge of, the Japanese healthcare market. Ashman Decl. ¶¶ 7-10. It is difficult to envision a case presenting a more extreme example of an undue burden sought to be imposed by a Rule 30(b)(6) subpoena.

## CONCLUSION

IMS is willing to produce the reasonably available documents in its possession, custody or control relevant to the arbitral proceedings – together with an affidavit establishing the authenticity of those documents and their status as IMS business records. To the extend any such documents then need to be translated from Japanese, that will, of course, be Progenics' burden.[8]

What IMS is unwilling to do, and should not now be forced to do, is manufacture a New York trial witness, pretending to provide sworn testimony about matters undeniably far beyond his or her knowledge. Progenics' attempt to compel the manufacture of such near-worthless testimony, in the hope that they can then parlay that into the testimony they really seek from a witness in Japan, should be rejected by this Court.

Accordingly, IMS respectfully requests that this Court deny Progenics' motion and that the testimonial component of the Subpoena be quashed.

---

deposition testimony on the single, narrow issue: whether the Israeli government had instructed the bank not to accept transfers into the alleged leader's account. Answering that yes-no question through a U.S. employee hardly posed an undue burden, and the subpoena was therefore enforced.

[8] *Nature's Plus Nordic A/S v. Natural Organics, Inc.*, 274 F.R.D. 437, 441-42 (E.D.N.Y. 2011) (citing *In re Puerto Rico Elec. Power Auth.*, 687 F.2d 501, 509 (1st Cir. 1982) (holding that a requesting party cannot impose the cost of translating documents that exist in a foreign language on the producing party, because each party should "bear the ordinary burden of financing his own suit"); *Briese Lichttechnik Vertriebs GmbH v. Langton*, 272 F.R.D. 369, 374 n.4 (S.D.N.Y. 2011) (same).

11

Dated: New York, New York
August 11, 2014

                                  Respectfully submitted,

                                  PILLSBURY WINTHROP SHAW PITTMAN LLP

                                By: /s/ Kenneth W. Taber
                                      Kenneth W. Taber
                                      1540 Broadway
                                      New York, New York 10036
                                      (212) 858-1000 (telephone)
                                      (212) 858-1500 (fax)
                                      kenneth.taber@pillsburylaw.com

                                      *Attorneys for Respondent IMS Consulting Group*